UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CARL LITTLE, *et al.*                              CIVIL ACTION

VERSUS                                             NO. 23-5394

QUALITY TITLE SERVICES, LLC, *et al.*              SECTION M (1)

## ORDER & REASONS

Before the Court is a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by defendants Sternberg, Nacarri & White, LLC ("SNW"); and Scott Sternberg, Clayton White, Joseph Marriott, and Keith Nacarri (collectively, the "QTS member defendants"); and M. Suzanne Montero.[1] Also before the Court is a Rule 12(b)(6) motion to dismiss filed by defendant Quality Title Services, LLC ("QTS").[2] Plaintiffs Carl Little and Carl Little Law, LLC ("Little Law") (together, "Plaintiffs") respond in opposition to each motion,[3] and the defendants reply in further support of their respective motions.[4] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motions to dismiss.

**I.     BACKGROUND**

This case concerns claims brought by a former member of a limited liability company ("LLC") against that company, other members of the LLC, and an associated law firm. SNW is a New Orleans-based law firm founded by Sternberg, Nacarri, and White in 2017.[5] QTS is a title

---

[1] R. Doc. 10.
[2] R. Doc. 12.
[3] R. Docs. 23; 24.
[4] R. Docs. 31; 33.
[5] R. Doc. 10-1 at 2.  Defendant Montero is also a member of SNW.  R. Doc. 2-1 at 2-3.

company affiliated with SNW that handles real estate closings and other title-related matters.[6]  In 2019, QTS's members entered into the relevant operating agreement for the LLC.[7]  At that time, QTS's members, and there corresponding ownership interests, were: Sternberg (15%), White (15%), Naccari (15%), Marriott (20%), C. Richard Gerage (20%), and Little (15%).[8]  Gerage, Marriott, and Naccari were QTS's managing members.[9]  QTS's operating agreement required its members to be continually associated with SNW, either as an employee or "of counsel" attorney.[10]  Thus, in 2019, Little began working for SNW as a contract lawyer.[11]

In July 2022, Little resigned from SNW.[12]  According to Little, his resignation from SNW made him a "non-qualifying member," but a member nonetheless, of QTS.[13]  The operating agreement states that if a member is no longer affiliated with SNW, as required by the operating agreement, QTS, "at its option, may elect to purchase such Member[']s Company Interest at any time after the Member is no longer qualifie[d], and the non-qualifying Member shall sell his/her Company Interest at the Fair Market Value ["FMV"] as defined herein paid in quarterly installments over a period of up to five years."[14]  On October 14, 2022, QTS sent Little a check for $5,000 as a "good faith payment until the purchase price is determined."[15]  The parties agreed

---

[6] R. Doc. 2-1 at 2.
[7] R. Doc. 10-2.
[8] *Id.* at 28-34.
[9] *Id.* at 36.
[10] *Id.* at 13.
[11] R. Doc. 2-1 at 2.
[12] *Id.* at 3.
[13] *Id.* at 3, 8.
[14] R. Doc. 10-2 at 22.  QTS's operating agreement defines FMV as:
> … the valuation of any asset of the Company [*i.e.*, QTS], whether real or personal property, as determined by the Managing Member(s), and in the case of a Capital Contribution by the mutual agreement of the Managing Member(s) and the contributing member.  If the contributing Member does not agree with the valuation determined by the Managing Member(s), the value shall be determined upon an appraisal of the asset by a duly qualified appraiser for the type of assessment being appraised.  The appraiser shall be selected by the Managing Member(s) and any fees for the appraiser and all costs relating to the appraisal shall be borne and paid by the Company.

*Id.* at 4.
[15] R. Doc. 2-1 at 4.

to engage a business valuator to determine QTS's FMV.[16]  After considering three names suggested by Little, QTS chose Jason MacMorran of Postlewaite & Netterville, APAC.[17]

Plaintiffs allege that, from 2019 to July 2022, SNW improperly billed QTS $457,994.16 for "legal services" that could have been performed in-house at QTS, doing so to diminish the value of Little's QTS ownership shares and reduce his pro rata distributions.[18]  Plaintiffs contend that MacMorran valued QTS at $903,277, meaning that Little's corresponding 15% membership interest is worth $135,000.[19]  Plaintiffs claim that QTS refuses to pay Little the proper FMV for his membership interest as calculated by MacMorran.[20]  They also claim that, because Little is still a member of QTS, he is entitled to a pro rata share of any distributions from the date of his resignation from SNW until the parties reach an agreement as to the value of his interest in the entity and a corresponding sales price.[21]

Plaintiffs also allege that Little discovered during the valuation process (when QTS produced documents to MacMorran) that the QTS member defendants applied for, and received, Paycheck Protection Program and EIDL Loans (together, the "government loans"), without his knowledge and consent.[22]  Plaintiffs claim that this constitutes a breach of fiduciary duty and also that, if the funds were distributed among the members, Little is entitled to a share of those funds in proportion to his ownership interest in QTS.[23]  Plaintiffs further allege that SNW failed to pay Little for legal services he performed while working for SNW as a contract lawyer.[24]

---

[16] *Id.*
[17] *Id.*
[18] *Id.* at 3, 4, 6-8.
[19] *Id.* at 4.
[20] *Id.* at 5.
[21] *Id.* at 8.
[22] *Id.* at 5.  "EIDL" stands for the U.S. Small Business Administration's COVID-19-related Economic Injury Disaster Loan program.
[23] *Id.* at 5-6.
[24] *Id.* at 8.

On June 29, 2023, Plaintiffs filed this action in the Civil District Court for the Parish of Orleans, State of Louisiana.[25] In the first cause of action ("count 1"), Little alleges a breach-of-contract claim against QTS for failure to pay him the FMV of his membership interest ($135,000) as calculated by MacMorran.[26] The second cause of action ("count 2") is a breach-of-fiduciary-duty claim by Little against the QTS member defendants for their alleged failure to pay him the FMV of his membership interest in QTS.[27] The third cause of action ("count 3") is another breach-of-fiduciary-duty claim, and also a breach-of-contract claim, by Little against the QTS member defendants, this time for their alleged failure to include Little in the application process for, and distribution of, the government loans.[28] In the fourth cause of action ("count 4"), Little brings conversion and theft claims against the QTS member defendants for receiving proceeds of the government loans without giving Little his pro rata share.[29] In the fifth cause of action ("count 5"), Little alleges that the QTS member defendants and Montero (a member of SNW, but not QTS) engaged in a conspiracy to fraudulently bill QTS for legal services performed by SNW in order to reduce the value of Little's ownership in QTS and the amount of his distributions from QTS.[30] Little also claims that these actions were a breach of fiduciary duty by the QTS member defendants.[31] The sixth cause of action ("count 6") is a breach-of-contract claim by Little and Little Law against SNW for its alleged failure to pay for legal work Little performed while associated with SNW as a contract lawyer.[32] In the seventh cause of action ("count 7"), Little brings a breach-of-contract claim against QTS and the QTS member defendants for their failure to

---

[25] *Id.* at 1.
[26] *Id.* at 9.
[27] *Id.* at 9-10.
[28] *Id.* at 10-11.
[29] *Id.* at 11.
[30] *Id.* at 11-12.
[31] *Id.*
[32] *Id.* at 12-13.

4

continue to pay him pro rata distributions from the date of his resignation from SNW until the completion of the sale of his membership interest in QTS as a "non-qualifying member."[33] The eighth cause of action ("count 8") is an unjust enrichment claim by Little and Little Law against SNW and the QTS member defendants for SNW's billing QTS for legal services and for failing to include Little in any distributions of the government loans.[34] The ninth cause of action ("count 9") is another unjust enrichment claim by Little and Little Law against the QTS member defendants and Montero for their failure to pay for legal services performed by Little while he was a contract lawyer at SNW.[35] In the tenth cause of action ("count 10") (mislabeled, ninth cause of action), Little seeks an accounting from QTS.[36]

In state court, QTS reconvened for a concursus proceeding, placing into that court's registry the sum of $19,485, which QTS claims is the amount Little is due for the FMV of his ownership interest in the LLC.[37] Thereafter, the United States of America removed the case to this Court because it is a judgment creditor of Little, with a right to enforce its money judgment against Little's interest in QTS and in any intangible property, including his claims against the defendants.[38] SNW, the QTS member defendants, Montero, and QTS now move to dismiss certain of the causes of action brought against them by Plaintiffs.[39]

## II.   LAW & ANALYSIS

### A.   Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   Rule

---

[33] *Id.* at 13-14.
[34] *Id.* at 14-15.
[35] *Id.* at 15-16.
[36] *Id.* at 16.
[37] R. Doc. 2-2 at 1-5.
[38] R. Doc. 2 at 1-5.
[39] R. Docs. 10; 12.

8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (alteration omitted).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration omitted).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "'[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)). Motions to dismiss are disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."[40] *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the

---

[40] Plaintiffs attached documents to their opposition memoranda that were not referenced in, nor central to, the complaint. *See* R. Docs. 23-1; 24-1; 24-2. The Court will not consider these documents in ruling on the motions to dismiss.

7

complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### B. Analysis

#### 1. Little Law's claims

SNW, the QTS member defendants, and Montero move to dismiss any claims that Little Law may have brought against them in counts 2, 3, 4, 5, 7, and 8, pointing out that, because the complaint defines "Little" as Little *and* Little Law, these counts could be read as including Little Law in the assertion of such claims, but that Little Law, as it was never affiliated with QTS, cannot maintain these claims since they pertain to Little's relationship with the LLC.[41] Similarly, QTS moves to dismiss any claims against it by Little Law for lack of standing because Little Law was not a member of the LLC.[42] Plaintiffs agree that Little Law is not a party to counts 2, 3, 4, 5, 7, and 8, nor does it bring any claims against QTS.[43] Accordingly, any claims purportedly asserted by Little Law in counts 2, 3, 4, 5, 7, and 8 against SNW, the QTS member defendants, and Montero, and any claims asserted by Little Law against QTS, are dismissed.

#### 2. Little's breach-of-fiduciary duty claim against the QTS member defendants for failure to pay the FMV for Little's membership interest in QTS (count 2)

The QTS member defendants argue that Little cannot maintain a breach-of-fiduciary-duty claim against them for failing to pay the FMV for his membership interest in QTS because, as

---

[41] R. Doc. 10-1 at 4-5.
[42] R. Doc. 12-1 at 5-6.
[43] R. Docs. 23 at 1-2; 24 at 3.

members of the LLC, they are not individually liable for the company's debts.[44] They contend that this is really a claim against QTS, which Little raises in count 1.[45] As pointed out by the QTS member defendants in their reply, Plaintiffs' opposition memorandum does not contest their arguments regarding count 2, but rather lumps count 2 in with counts 3 and 4, which concern the government loans.[46]

Little's claim seeking recovery of the FMV of his membership interest in QTS is properly categorized as a breach-of-contract (the operating agreement) claim against the LLC, not a breach-of-fiduciary-duty claim against the other members. Under Louisiana law, "no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company." La. R.S. 12:1320(B). Thus, if any amount is owed for the value of Little's membership interest, it is owed by QTS, not the QTS member defendants individually. Further, Little offers no real opposition to dismissal of this claim. Thus, count 2 is dismissed.

3. **Little's breach-of-fiduciary-duty and conversion claims against the QTS member defendants for failing to notify him of the application for, and receipt and distribution of, the government loans (counts 3 & 4)**

The QTS member defendants contend that Little cannot state breach-of-fiduciary-duty or conversion claims against them related to the application for, and receipt and alleged distribution of, the government loans that were fully forgiven because they did not breach the operating agreement in this respect, nor did QTS suffer any harm by receiving loans that were forgiven.[47] They also argue that Little's accusation they kept the money is mere speculation, that the money

---

[44] R. Doc. 10-1 at 6-7. They also argue that Sternberg and White, as non-managing members of QTS, owe no fiduciary duty to Little with respect to the operation of the LLC. *Id.* at 5-6. Because counts 2 and 3 fail on other grounds, the Court need not address this argument.
[45] *Id.* at 7.
[46] R. Doc. 31 at 2-3 (citing R. Doc. 23 at 4-7).
[47] R. Doc. 10-1 at 7-8.

9

never belonged to Little, and that any claim they kept the money for their personal gain would belong to QTS, not Little.[48]  In opposition, Little clarifies that he is not stating any claim for the application for, and receipt of, the government loans, but rather his claim is that the alleged distribution of the government loans among the other members (and not him) was a breach of fiduciary duty and conversion.[49]  He argues that he has pleaded enough facts to show that QTS received the government loans and it appears from the balance sheet that, "[u]pon information and belief," the funds were distributed to the other members.[50]  In reply, the QTS member defendants reiterate that there are not enough facts stated in the complaint to raise a plausible claim for conversion, that Little did not have any ownership interest in the government loans, and that any claim that the other members kept the money would belong to QTS.[51]

A careful reading of the complaint reveals that count 3 concerns the application for, and receipt of, the government loans, as well as their allegedly improper distribution.[52]  Because Little admits that he is not asserting any claim for the application and receipt of the government loans, count 3 is dismissed in those respects.  As to the allegedly improper distribution of the government loans, Little has not stated a plausible claim for breach of fiduciary duty or conversion.

Under Louisiana law, to establish a breach of fiduciary duty claim a plaintiff must demonstrate: "(1) existence of a fiduciary duty, (2) a violation of that duty by the fiduciary, and (3) damages resulting from the violation." *U.S. Small Bus. Admin. v. Beaulieu*, 75 F. App'x 249, 252 (5th Cir. 2003).  "[W]hether a fiduciary duty exists, and the extent of that duty, depends upon

---

[48] *Id.* at 8-11.
[49] R. Doc. 23 at 4-7.
[50] *Id*. (quoting R. Doc. 2-1 at 6).
[51] R. Doc. 31 at 4-6.
[52] R. Doc. 2-1 at 10-11.

10

the facts and circumstances of the case and the relationship of the parties." *Omega Ctr. for Pain Mgmt., L.L.C v. Omega Inst. of Health, Inc.*, 975 So. 2d 48, 51 (La. App. 2007).

"'Generally, conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion.'" *An Erny Girl, L.L.C. v. BCNO 4 L.L.C.*, 257 So. 3d 212, 222 (La. App. 2018) (quoting *New Orleans Jazz & Heritage Found., Inc. v. Kirksey*, 40 So. 3d 394, 405 (La. App. 2010), and *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So. 2d 756, 760 (La. 1985)). Under Louisiana law:

> A conversion is committed when any of the following occurs: 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel.

*Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 721 So. 2d 853, 857 (La. 1998).

Here, Little has not stated plausible claims for breach of fiduciary duty or conversion related to the alleged distribution of the government loans among the other members of QTS. First, he has not alleged any facts beyond mere speculation that the QTS member defendants took distributions of the government loans. The petition uses phrases like "to the extent" it occurred and "upon information and belief" to hedge the allegations on this point. These equivocal statements are not enough to raise the claims beyond the possible to the plausible. Second, Little has not shown that he had an ownership interest in the proceeds from the government loans – which follows since they belonged to QTS. And, third, Little identifies no provision of the operating agreement that creates a fiduciary duty concerning the *distribution* of loan proceeds but, instead, only one addressing the requirements for *borrowings* (which Little has conceded is not at

11

issue).  Thus, Little's claims for breach of fiduciary duty and conversion against the QTS member defendants concerning the purported distribution of the government loans are dismissed.

    **4. Little's claim against the QTS member defendants and Montero for conspiracy to fraudulently bill QTS for legal services (count 5)**

The QTS member defendants and Montero argue that Little has not stated a claim for conspiracy to fraudulently bill QTS for legal services performed by SNW because conspiracy is not a cause of action and fraud is not pleaded with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.[53]  They also argue that any claim for a fraud perpetrated on QTS belongs to QTS, not Little.[54]  In opposition, Little agrees that there is no stand-alone claim for conspiracy, but he contends he has alleged that the QTS member defendants and Montero conspired to breach their fiduciary duties and commit fraud, by having SNW bill QTS for legal services that QTS could have performed, in order to decrease QTS's revenue and value and increase those of SNW.[55]  Little asserts that he has alleged enough facts to state a claim for fraud by silence or inaction.[56]  In reply, the QTS member defendants and Montero point out that Little has failed to show any justifiable reliance resulting in an injury and that QTS would have sustained the supposed loss, not Little.[57]

Under Louisiana law, "fraud" is defined as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other" and can also result from silence or inaction.  La. Civ. Code art. 1953.  The elements of a fraud cause of action are: (1) "a misrepresentation of material fact"; (2) "made with the intent to deceive"; (3) "where there was a reasonable and justifiable reliance by

---

[53] R. Doc. 10-1 at 9-13.
[54] *Id.* at 13-14.
[55] R. Doc. 23 at 7-10.
[56] *Id.*
[57] R. Doc. 31 at 7-9.

the plaintiff and resulting injury." *Riedel v. Fenasci*, 270 So. 3d 795, 801 (La. App. 2018). A plaintiff must prove fraud by a preponderance of the evidence, and "[c]ircumstantial evidence, including highly suspicious facts and circumstances, may be considered in determining whether fraud has been committed." *Lomont v. Bennett*, 172 So. 3d 620, 629 (La. 2015).

Rule 9(b) imposes a heightened pleading standard on allegations of fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177-78 (5th Cir. 1997). Put simply, complying with Rule 9(b) requires a plaintiff to "set forth the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quotation omitted). Thus, a plaintiff alleging fraud "cannot rely on speculation or conclusional allegations." *United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 873 (5th Cir. 1992). "'A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6).'" *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 n.8 (5th Cir. 2009) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997)).

Here, Little has not pleaded fraud with the particularity required by Rule 9(b). He generally alleges that the QTS member defendants and Montero "conspired to suppress the value of [his] interest in QTS and inflate revenues to SNW by satisfying SNW invoices charging for title services that should have been performed by QTS," but he offers no concrete examples elucidating the

13

who, what, when, where, and how of the alleged fraud.[58]  No misrepresentations are detailed. There is no information demonstrating why QTS, and not SNW, should have performed specific legal services, when these services were performed, who performed them, what they related to, or why the billing that occurred was in contravention of the affiliation and course of conduct between the two entities.  Further, Little has not explained why only he – and not the two other members of QTS, including Marriott, who were not also members of SNW – was harmed by the alleged fraud.  Such minimum pleading is required whether the fraud was committed by word or deed, silence or inaction.  In sum, Little has not stated a fraud claim under Rule 9(b), and count 5 is dismissed.

     **5. Little's breach-of-contract claim against the QTS member defendants and QTS for failing to continue to pay distributions to him from QTS after his resignation from SNW (count 7)**

The QTS member defendants and QTS argue that Little has no claim for continuing distributions from QTS because, as of July 2022, he was no longer a member of the LLC.[59]  They argue that Little ceased being a member of the LLC when he resigned from SNW and, from that moment, was no longer entitled to distributions.[60]  QTS also contends that it is self-contradictory for Little to claim he is entitled to the amount he believes was the value of his pro rata share of the LLC in July 2022 (the date he resigned from SNW), and to also demand continuing distributions as a purported member of the LLC.[61]  Little, on the other hand, contends that he is still a member of QTS, albiet a "non-qualifying" member as defined in the operating agreement, and thus entitled to continuing distributions.[62]  He argues that the operating agreement makes no distinction between

---

[58] *See* R. Doc. 2-1 at 11-12.
[59] R. Docs. 10-1 at 14-15; 12-1 at 6-8; 31 at 9.
[60] R. Docs. 10-1 at 14-15; 12-1 at 6-8.
[61] R. Doc. 33 at 3-6.
[62] R. Docs. 23 at 10; 24 at 9-10.

14

qualifying and non-qualifying members for the purposes of distributions, but if it is ambiguous in this respect, the ambiguity should be construed against the agreement's drafters.[63]

To determine whether Little continues to be a member of QTS requires the Court to examine the operating agreement, as the relevant contract. Article 2046 of the Louisiana Civil Code provides that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." The Louisiana supreme court has clarified that "Article 2046 emphasizes that the process involves no *further* interpretation, as opposed to no interpretation at all." *Ortego v. State, Dep't of Transp. & Dev.*, 689 So. 2d 1358, 1363 (La. 1997) (emphasis in original). "Courts apply this rule of construction in light of the general principle that the instrument must be considered as a whole and in light of attending events and circumstances." *Trahan v. Coca Cola Bottling Co. United, Inc.*, 894 So. 2d 1096, 1107 (La. 2005). While "[t]he words of a contract must be given their generally prevailing meaning," "[w]ords of art and technical terms must be given their technical meaning when the contract involves a technical matter." La. Civ. Code art. 2047.

The QTS operating agreement contains no ambiguity regarding what is required for one to be, and continue as, a member of the LLC. Section 6.1 of the operating agreement provides, in pertinent part, that "[i]n order to be admitted to the Company [*i.e.*, QTS] as a Member *and continue as a Member*, a Person must … be associated with the law firm of Sternberg, Naccari & White LLC either as an employee or 'Of Counsel' lawyer."[64] It is clear that to qualify *and continue* as a member of QTS, one must be an attorney at SNW in some capacity. Once a person ceases to be an attorney at SNW, he or she is no longer qualified to be a member of QTS. And, importantly, under the express terms of section 6.1, that person cannot and does not continue to be a member

---

[63] R. Doc. 24 at 9-10.
[64] R. Doc. 10-2 at 13 (emphasis added).

of QTS. The operating agreement recognizes but a single class of members,[65] so provides no room for Little's contention that his resignation from SNW simply moved him from a class of qualifying members to one of non-qualifying members.[66] Read as a whole, the operating agreement makes plain that a member who was once, but now no longer, qualified is no longer a member. Section 10.8 of the operating agreement sets out what occurs once one is no longer qualified to be, and thus no longer, a member of the LLC.[67] Specifically, the non-qualifying – that is, former – member of QTS must sell his interest in the LLC to the entity at the FMV.[68] Thus, when Little resigned from SNW in July 2022, his membership in QTS ceased, meaning that he is not entitled to pro rata distributions from the company after that date. Accordingly, count 7 must be dismissed.

6. **Little's unjust enrichment claims against SNW, the QTS member defendants, and Montero (counts 8 and 9)**

SNW, the QTS member defendants, and Montero argue that both of Little's unjust enrichment claims must be dismissed because Little has other remedies at law.[69] Although Little agrees that unjust enrichment is subsidiary in nature and generally unavailable when a plaintiff has another remedy at law, he argues that he should be able to maintain his unjust enrichment claims if the defendants' motion to dismiss is successful as to dismissing the other claims.[70]

Louisiana Civil Code article 2298 provides the basis for an action based on unjust enrichment, or *actio de in rem verso*. Article 2298 states: "A person who has been enriched without cause at the expense of another person is bound to compensate that person." The Louisiana

---

[65] *Id.* at 9 (section 3.1 provides that QTS "shall have one class of Members: Common Members" who are specified to have the "membership interests," as "holders of Common Units," contemplated by the definition of "member" in La. R.S. 12:1301(13)).
[66] Taken to its limit, the logic of Little's argument becomes untenable, as it would create classes of membership for a "retiring member" (section 10.9, R. Doc. 10-2 at 22) and perhaps even dissolved, dead, or interdicted members (sections 10.6 and 10.7, *id.* at 21-22). The operating agreement, properly construed, admits of no such logic.
[67] *Id.* at 22.
[68] *Id.*
[69] R. Doc. 10-1 at 16-17.
[70] R. Doc. 23 at 11.

16

supreme court has held that the five requirements for establishing a cause of action for unjust enrichment are:

> (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) there must be no other remedy at law available to plaintiff.

*Baker v. Maclay Props. Co.*, 648 So. 2d 888, 897 (La. 1995). Article 2298 expressly states that the remedy of unjust enrichment "is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule." La. Civ. Code art. 2298. A plaintiff is precluded from seeking recovery under a theory of unjust enrichment if it pleads another cause of action, regardless of whether the plaintiff is successful on the other theory of recovery. *Walters v. MedSouth Rec. Mgmt., LLC*, 38 So. 3d 243, 244 (La. 2010). Thus, if the law provides the plaintiff with another remedy, the plaintiff "has failed to state a cause of action in unjust enrichment." *Id.*

Little has not stated a valid claim for unjust enrichment. The unjust enrichment remedy is only applicable to fill a gap in the law where no express remedy is provided. Little has pleaded other claims that would entitle him to recover for the alleged impoverishment, if proved. Hence, Little has other potential remedies at law, and the subsidiary claims for unjust enrichment must be dismissed. Therefore, the defendants' motion to dismiss for failure to state a claim is granted as to Little's unjust enrichment claims in counts 8 and 9.

### 7. Little's claim for an accounting (count 10)

QTS argues that Little is not entitled to an accounting because he is no longer a member of QTS.[71] QTS contends that it is illogical for Little to claim to be member entitled to an accounting and to view sensitive information when he no longer works for QTS, but instead works for a

---

[71] R. Doc. 12-1 at 8-10.

competitor.[72] Although Little agrees that non-members are not entitled to an accounting from an LLC, he argues that he is still a member of QTS, but a "non-qualifying" member as defined by section 10.8 of the operating agreement, and thus entitled to an accounting.[73]

This Court has already determined that Little is no longer a member of QTS. Therefore, he is not entitled to an accounting, and count 10 is dismissed.

### III. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the motion to dismiss of SNW, the QTS member defendants, and Montero (R. Doc. 10) is GRANTED.

IT IS FURTHER ORDERED that QTS's motion to dismiss (R. Doc. 12) is GRANTED.

New Orleans, Louisiana, this 26th day of October, 2023.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[72] R. Doc. 33 at 6-8.
[73] R. Doc. 24 at 5-9.