UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CARL LITTLE and** | * | |
| **CARL LITTLE LAW, LLC** | * | |
| | * | **NO. 23-5394-BWA-JVM** |
|    **Plaintiff** | * | |
| | * | **SECTION M (1)** |
| **VERSUS** | * | |
| | * | **JUDGE BARRY ASHE** |
| | * | |
| **QUALITY TITLE SERVICES, LLC,** | * | **MAGISTRATE JUDGE** |
| **et al** | * | **JANIS VAN MEERVELD** |
|    **Defendants** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS UNDER RULE 12(C) (Rec. Doc. 38)**

  **THIS MEMORANDUM** is submitted on behalf of the plaintiff, Carl Little, in opposition to the Motion for Judgment under Rule 12(c) filed on behalf of the defendant, Quality Title Services, LLC ("QTS").

      **I.**  **Introduction and Facts**

  The facts relevant to this Motion are set forth fully in the Plaintiffs' Petition, are incorporated by reference and will not be repeated here. With regard to the procedural status of this matter, the Court granted Motions to Dismiss in favor of QTS and the SNW Defendants on some but not all of the claims advanced against various parties.[1] The Plaintiffs filed a Motion for Reconsideration of the Court's Order & Reasons with respect to the Defendants' Rule 12(b)(6) motions on November 9, 2023. As to QTS, what remains at issue is the purchase price for Mr.

---

[1] Subject to Plaintiffs' Motion for Reconsideration, the only remaining claim against QTS is for payment for the value of Mr. Little's interest in QTS, and the remaining claim against the SNW Defendants is Count 6, which sought payment for work performed while Mr. Little was employed by SNW. The Plaintiffs seek reconsideration of the Court's dismissal of Counts 3, 4 and 5 due to a manifest error of law prejudicing the Plaintiffs.

Little's interest once he became a Non-Qualifying Member. This issue cannot be resolved on the pleadings on both procedural and substantive grounds. Procedurally, QTS relies on a document which is not incorporated by reference into the Petition. Substantively, QTS misinterprets the terms of the Operating Agreement. Alternatively, the Operating Agreement is ambiguous and should be construed against QTS. As a matter of law, QTS is not entitled to a motion on the pleadings. As such, the motion should be denied in its entirety.

## II.     Standard of Review

As with a Rule 12(b)(6) motion, a court in the context of a Rule 12(c) accepts "all well pleaded facts as true, viewing them in the light most favorable to the plaintiff."[2] If the Court considers any intrinsic evidence, the motion must be converted to one for summary judgment under Rule 56. FRCP 12(d) provides:

> RESULT OF PRESENTING MATTERS OUTSIDE THE PLEADINGS. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

QTS attaches the Valuation by Mr. MacMorran to its motion and then attempts to use the valuation as an expert report in order to prove the meaning of various terms in the Operating Agreement. This Court should reject QTS' invitation to consider or rely upon the Valuation of Jason MacMorran for the purpose of a Motion for Judgment on the Pleadings.

---

[2] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (internal quotation marks, citation, and alteration omitted).

### III.     Argument

*A.  Opinions of Appraiser as to Provisions of the Operating Agreement Not Admissible*

The Valuation Report is not referenced specifically in the Petition nor is it attached to the Petition; instead, the Plaintiff merely reports the number Mr. MacMorran assigned to the value of his interest:

16.

> Mr. MacMorran accepted as correct evidence of the $457,994.16 billed by SNW to QTS for "legal fees" when determining the value of Mr. Little's 15% interest in QTS and determined that the undiscounted fair market value of Mr. Little's interest in QTS was $135,000 (based on a total value of QTS of $903,277).

Plaintiff was under no obligation to attach the Valuation to his Petition, and the Court is obligated to accept the factual allegation with regard to the amount assigned to Mr. Little's interest as true. Plaintiff made no reference to Mr. MacMorran's legal musings as to the terms of the Operating Agreement, and QTS should not be allowed to "backdoor" the admission of the Valuation without conversion of the motion to one for summary judgment. Instead, if the Court is to consider the document, it should limit its review solely to the amounts assigned and not take into consideration Mr. MacMorran's opinions as to the legal meanings of the terms of the agreement or his conclusions as to the proper calculation of the buy-out amount for Mr. Little's interest.

Furthermore, that Mr. MacMorran made additional valuations or opined as to his interpretation of the Operating Agreement is of no moment and is also not admissible evidence of a Rule 12(c) motion.  Mr. MacMorran is not an attorney, and his opinions as to the meanings of portions of the Operating Agreement would not withstand scrutiny under a *Daubert*[3] challenge (nor does this Court need assistance from an accountant as to issues of contract law). Neither can

---

[3] *Daubert v. Merrell Dow Pharm., Inc*. 509 U.S. 579 (1993).

Mr. MacMorran's report resolve factual disputes as to the meaning of the Operating Agreement or what was intended when the document was drafted. If QTS wishes to rely on Mr. MacMorran's opinions to support its motion, then the Court should convert the motion to one for summary judgment and allow the parties to submit affidavits, conduct discovery, and submit expert reports.

Mr. MacMorran determined that the undiscounted fair market value of Mr. Little's interest in QTS was $135,000 as of the date of his resignation from SNW. That valuation is in accord with Sections 10.8 and 1.23 of the Operating Agreement. Mr. MacMorran is neither qualified to nor was he asked to opine as to the proper interpretation of the Operating Agreement, and his opinions should be disregarded by the Court.

### B. Operating Agreement Does Not Mandate the Use of Book Value

QTS misinterprets the terms of its own Operating Agreement in order to escape liability to Mr. Little for his share of the entity. QTS sought to purchase Mr. Little's interest following his resignation from Sternberg, Naccari and White, LLC ("SNW"). The definition of "Fair Market Value" as "Book Value" is not applicable to a buyout under Section 10.8 which applies to a "Non-Qualifying Member." Instead, the provision relied upon by QTS in support of its argument is a subset of, and therefore only applies to, Section 10.10 which has limited application to Sections 10.3 (Death of a Member's Spouse), 10.4 (Dissolution of Community) and 10.5 (Bankruptcy of Member) only:

> Section 10.10  Purchase Price of Membership Interest.
>
> (a) The purchase price to be paid for any Company Interest subject to a Transfer pursuant to Sections 10.3, 10.4, and 10.5 (other than in the case of a surviving, separating or divorcing Member whose purchase shall be on such terms as he or she may negotiate) shall be an amount equal to the Fair Market Value of the Member's Company Interest.

4

Subpart (a) is a limiting or restrictive provision dealing with the calculation of the purchase price in certain identified instances. Subpart 10.10(c)'s definition of fair market value only applies to the circumstances arising under Section 10.10.

"Fair Market Value" is also defined in Section 1.23, and there is no limitation to "Book Value." Section 10.8 is not addressed in Section 10.10, which contains its own buyout language. Specifically, Section 10.8 provides:

> Section 10.8   <u>Non-Qualifying Member</u>. If a Member no-longer qualifies as a Member under Section 6.1 herein, the Company, at its option, may elect to purchase such Members Company Interest at any time after the Member is no longer qualifies [*sic*], and the non-qualifying Member shall sell his/her Company Interest at the Fair Market Value as defined herein paid in quarterly installments over a period of up to five years.

As this section does not contain a definition of "Fair Market Value," the definition contained in "Article 1- Definitions" applies:

> Section 1.23   "<u>Fair Market Value</u>" shall mean the valuation of any asset of the Company, whether real or personal property, as determined by the Managing Member(s), and in the case of a Capital Contribution by the mutual agreement of the Managing Member(s) and the contributing Member. If the contributing Member does not agree with the valuation determined by the Managing Member(s), the value shall be determined upon an appraisal of the asset by a duly qualified appraiser for the type of asset being appraised. The appraiser shall be selected by the Managing Member(s) and any fees for the appraiser and all costs relating to the appraisal shall be borne and paid by the Company.

This is precisely what happened. An appraiser was selected, Jason MacMorran, and paid for by QTS. That appraiser determined that the undiscounted Fair Market Value of the Mr. Little's interest was $135,000.[4] Mr. Little specifically pleads the application of Section 1.23's definition at Paragraphs 13-18 of the Petition. Further, QTS' reliance on *Mixon*[5] is misplaced as that case

---

[4] P&N Report, Doc. 38-3, p. 3 of 47.
[5] *Mixon v. Iberia Surgical Supplies, LLC*, 06-878 (La. App. 3 Cir. 4/18/07), 956 So.2d 76.

involved a plaintiff who helped to draft the Operating Agreement. It is clear that an issue of fact exists as to proper determination of the fair market value of Mr. Little's interest in QTS, and therefore, QTS is not entitled to a judgment on the pleadings under Rule 12(c).

### C. Ambiguity in Operating Agreement Prevents Dismissal

At the very minimum, the Operating Agreement contains two different definitions of the term "Fair Market Value." This conflict is solely a result of the drafting of the agreement and, as such, creates an ambiguity which should be construed against the drafters. Specifically, La.-C.C. Art. 2056 provides in part that:

> In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.

Mr. Little had no role in the drafting of the Operating Agreement, and QTS did not dispute Mr. Little's representation to this effect in his Opposition to QTS' 12(b)(6) motion.

> In cases in which the contract is ambiguous, the agreement shall be construed according to the intent of the parties. Intent is an issue of fact which is to be inferred from all of the surrounding circumstances. Any doubtful provisions must be interpreted in light of the nature of the contract, equity, usages, the conduct of the party before and after the formation of the contract, and other contracts of a like nature between the same parties. Borden v. Gulf States Utilities Company (La.App. 1st Cir.), 543 So.2d 924, 927-928, writ denied, 545 So.2d 1041 (La.1989). (Citations omitted.).[6]

"Any doubt or ambiguity in an agreement which cannot otherwise be resolved, must be interpreted against the party who prepared the contract, by whose negligence or fault the doubt arises. See *Guarantee Systems Constr. & Restoration, Inc. v. Anthony*, 97-1877 (La.App. 1st Cir. 9/25/98), 728 So.2d 398, 404, writ denied, 98-2701 (La. 12/18/98), 734 So.2d 636."[7] Given the ambiguity in the Operating Agreement arising from the fault of those acting on behalf of QTS, material facts

---

[6] *Certified Finance, Inc. v. Bates*, 749 So.2d 687 (La. App. 1998).
[7] *Holliday v. Holliday*, 795 So.2d 423 (La. App. 2001).

are in dispute which prevent a judgment on the pleadings pursuant to FRCP 12(c) and the motion should be denied.

### D. Dismissal Based on Challenged Deposit into the Registry of the Court Improper

QTS' final argument that it should be dismissed from the suit based on its reliance on *Crabtree v. Estate of Kuo*,[8] because it deposited the amount that it wants to pay to Mr. Little for his interest in the entity based upon a misinterpretation of the Operating Agreement, is incorrect. Mr. Little has objected to the factual allegations as to the propriety of the amount deposited into the registry of the court in its Answer to the Petition for Concursus.[9] In *Crabtree*, the party initiating the concursus proceeding was an insurer and it deposited its policy limits, plus interest and costs, into the registry of the court and was subsequently dismissed on summary judgment, and not a Rule 12(c) motion. The case cited merely reports the prior proceedings in the case, and there is no evidence that there was any dispute as to the amount of policy limits. In this case, there is a *bona fide* dispute as to the proper interpretation of the Operating Agreement, whether the terms of the agreement are ambiguous, and, most importantly, as to the correct calculation of the amount owed to Mr. Little. QTS cannot be allowed to decide the appropriate measure of damages and then seek dismissal based on its determination in reliance upon a poorly and unilaterally drafted document to achieve dismissal from the suit. Until the correct amount owed to Mr. Little is resolved, the request for dismissal based on deposit into the registry of the court is premature, and should be denied.

### IV.   Conclusion

For the foregoing reasons, the Motion to Dismiss should be denied, or alternatively, converted to a summary judgment motion upon notice to the parties.

---

[8] 2002-0612 (La. App. 4 Cir. 10/16/02), 830 So.2d, 1068.
[9] Rec. Doc. 35, Paragraph 13.

Respectfully Submitted,

/s/ Robert A. Kutcher
**ROBERT A. KUTCHER** (#7895)
**NICOLE S. TYGIER** (#19814)
*KUTCHER TYGIER & LUMINAIS, LLP*
Two Lakeway Center, Suite 900
3850 North Causeway Boulevard
Metairie, Louisiana  70002
Telephone:  (504) 830-3838
rkutcher@nolacounsel.com
ntygier@nolacounsel.com

*Attorneys for Plaintiffs, Carl Little and Carl Little Law, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2023, I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Robert A. Kutcher

8