UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CARL LITTLE, *et al.*                                    CIVIL ACTION

VERSUS                                                   NO. 23-5394

QUALITY TITLE SERVICES, LLC, *et al.*                    SECTION M (1)

# ORDER & REASONS

Before the Court is a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure filed by defendant Quality Title Services, LLC ("QTS").[1] Plaintiffs Carl Little and Little Law, LLC ("Little Law") (together, "Plaintiffs") respond in opposition,[2] and QTS replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motion and dismissing with prejudice Plaintiffs' claims against QTS.

## I.   BACKGROUND

This case concerns claims brought by a former member of a limited liability company ("LLC") against that company, other members of the LLC, and an associated law firm. Defendant Sternberg, Naccari & White, LLC ("SNW") is a New Orleans-based law firm founded by defendants Scott Sternberg, Keith Nacarri, and Clayton White in 2017.[4] QTS is a title company affiliated with SNW that handles real estate closings and other title-related matters.[5] In 2019, QTS's members entered into the relevant operating agreement for the LLC.[6] At that time, QTS's

---

[1] R. Doc. 39.
[2] R. Doc. 50.
[3] R. Doc. 57.
[4] R. Doc. 10-1 at 2.
[5] R. Doc. 2-1 at 2.
[6] R. Doc. 38-2.

members, and their corresponding ownership interests, were: Sternberg (15%), White (15%), Naccari (15%), Joseph Marriott (20%), C. Richard Gerage (20%), and Little (15%).[7]  Gerage, Marriott, and Naccari were QTS's managing members.[8]  QTS's operating agreement requires its members to be continually associated with SNW, either as an employee or "of counsel" attorney.[9]  Thus, in 2019, Little began working for SNW as a contract lawyer.[10]

In July 2022, Little resigned from SNW.[11]  According to Little, his resignation from SNW made him a "non-qualifying member" of QTS.[12]  QTS's operating agreement states that if a member is no longer affiliated with SNW, as required by the operating agreement, QTS, "at its option, may elect to purchase such Member[']s Company Interest at any time after the Member is no longer qualifie[d], and the non-qualifying Member shall sell his/her Company Interest at the Fair Market Value ['FMV'] as defined herein paid in quarterly installments over a period of up to five years."[13]  On October 14, 2022, QTS sent Little a check for $5,000 as a "good faith payment until the purchase price is determined."[14]  The parties agreed to engage a business valuator to determine QTS's FMV.[15]  After considering three names suggested by Little, QTS chose Jason MacMorran of Postlewaite & Netterville, APAC.[16]  Plaintiffs contend that MacMorran valued QTS at $903,277, meaning that Little's corresponding 15% membership interest is worth

---

[7] *Id.* at 28-34.
[8] *Id.* at 36.
[9] *Id.* at 13.
[10] R. Doc. 2-1 at 2.
[11] *Id.* at 3.
[12] *Id.* at 3, 8.
[13] R. Doc. 38-2 at 22.
[14] R. Doc. 2-1 at 4.
[15] *Id.*
[16] *Id.*

2

$135,000.[17]  Plaintiffs claim that QTS refuses to pay Little the proper FMV for his membership interest as calculated by MacMorran.[18]

On June 29, 2023, Plaintiffs filed this action in the Civil District Court for the Parish of Orleans, State of Louisiana, asserting claims in ten counts against the various defendants.[19]  In state court, QTS reconvened for a concursus proceeding, placing into that court's registry the sum of $19,485, which QTS says is the amount Little is due for the FMV of his ownership interest in the LLC.[20]  Thereafter, the United States of America removed the case to this Court because it is a judgment creditor of Little, with a right to enforce its money judgment against Little's interest in QTS and in any intangible property, including his claims against the defendants.[21]

The defendants then filed motions to dismiss, resulting in the dismissal of most of Plaintiffs' claims.  Plaintiffs' remaining claims are: (i) Little's breach-of-contract claim against QTS for failure to pay him the FMV of his membership interest ($135,000) as calculated by MacMorran (count 1); and (ii) Plaintiffs' breach-of-contract claim against SNW for its alleged failure to pay for legal work Little performed while associated with SNW as a contract lawyer (count 6).[22]

## II.   PENDING MOTION

QTS argues that it is entitled to judgment on the pleadings as to Little's breach-of-contract claim because it has deposited into the registry of the court $22,000, representing the FMV of Little's membership interest ($19,485), as defined by the operating agreement and calculated by McMorran, plus interest.[23]  QTS contends that the operating agreement defines FMV as "book

---

[17] *Id.* at 4.
[18] *Id.* at 5.
[19] *Id*. at 1-16.
[20] R. Doc. 2-2 at 1-5.
[21] R. Doc. 2 at 1-5.
[22] R. Docs. 2-1 at 9, 12-13; 36.
[23] R. Doc. 38.

3

value," which the contract further defines as an accounting value as of a specific date.[24] MacMorran determined Little's share of QTS's book value, as of July 31, 2022 (his resignation date), to be $19,485.[25] QTS asserts that, by the unambiguous contractual provisions, this is all it owes to Little.[26]

In opposition, Little argues that the Court cannot consider MacMorran's valuation because it was neither attached to, nor incorporated by reference in, the complaint.[27] Little also argues that the operating agreement does not mandate the use of book value because the paragraph defining FMV as book value, section 10.10(c), is meant to apply only to sections 10.3 (death of a member's spouse), 10.4 (dissolution of the community), and 10.5 (bankruptcy of a member).[28] According to Little, FMV for the purposes of section 10.8 (which addresses the buyout of a non-qualifying member such as himself) is defined by section 1.23 only, and not section 10.10(c).[29] Little argues that, at a minimum, the operating agreement is ambiguous as to the meaning of FMV in the instance of a non-qualifying member's buyout, and that ambiguity must be construed against the drafters.[30] Finally, Little argues that claims cannot be dismissed when the deposit into the court's registry is challenged.[31]

QTS replies that the Court may consider MacMorran's valuation report on a Rule 12(c) motion because Little referenced it in the complaint to allege that the FMV of his interest is

---

[24] R. Doc. 38-1 at 1-15.
[25] *Id.*
[26] *Id.*
[27] R. Doc. 50 at 1-3. Little also argues that the Court cannot consider MacMorran's "legal musings" as to the terms of the operating agreement. *Id.* at 3-4. QTS agrees that the Court should not consider MacMorran's legal conclusions. R. Doc. 57 at 4. The Court will rely on its own interpretation of the operating agreement, not MacMorran's.
[28] R. Doc. 50 at 4-6.
[29] *Id.*
[30] *Id.* at 6-7.
[31] *Id.* at 7.

$135,000.[32]  QTS further argues that the operating agreement unambiguously defines FMV as book value in section 10.10 where it states that "[f]or purposes of this Operating Agreement, the term 'Fair Market Value' shall mean the Book Value of a Company Interest with no discount by reason of a minority Company Interest or lack of liquidity."[33]  Finally, QTS argues that Little's claims against it must be dismissed because it has deposited all that could be owed to him in the court's registry.[34]

### III.   LAW & ANALYSIS

#### A. Rule 12(c) Standard

Rule 12 provides that "[a]fter the pleadings are closed ... a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  A Rule 12(c) motion is designed to "dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."[35] *Mendy Bros., LLC v. Bank of N.Y. Mellon*, 2017 WL 2558891, at *4 (E.D. La. June 13, 2017) (quotation omitted).  The standard for a Rule 12(c) motion for judgment on the pleadings is the same as that used to evaluate a Rule 12(b)(6) motion to dismiss.  *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009).  Thus, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The

---

[32] R. Doc. 57 at 3 (citing R. Doc. 2-1 at 4).
[33] *Id.* at 6-9 (quoting R. Doc. 38-2 at 23).
[34] *Id.* at 9.
[35] As an initial matter, the Court finds that Plaintiffs referenced and relied upon MacMorran's valuation report in the complaint.  *See* R. Doc. 2-1 at 4.  Thus, the Court may consider it in ruling on QTS's Rule 12(c) motion.

Court must take the well-pleaded factual allegations of the complaint as true and view them in the light most favorable to the plaintiff. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B. Analysis

Determining the amount Little is due for the FMV of his share of QTS requires the Court to examine the operating agreement, as the relevant contract. The agreement specifies that it is to be construed in accordance with Louisiana law.[36] Article 2046 of the Louisiana Civil Code provides that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." The Louisiana supreme court has clarified that "Article 2046 emphasizes that the process involves no *further* interpretation, as opposed to no interpretation at all." *Ortego v. State, Dep't of Transp. & Dev.*, 689 So. 2d 1358, 1363 (La. 1997) (emphasis in original). "Courts apply this rule of construction in light of the general principle that the instrument must be considered as a whole and in light of attending events and circumstances." *Trahan v. Coca Cola Bottling Co. United, Inc.*, 894 So. 2d 1096, 1107 (La. 2005). While "[t]he words of a contract must be given their generally prevailing meaning," "[w]ords of art and technical terms must be given their technical meaning when the contract involves a technical matter." La. Civ. Code art. 2047.

Here, the operating agreement unambiguously defines FMV as book value for all purposes, including the non-qualifying member buyout pursuant to section 10.8 that is at issue. Section 10.8 provides that QTS "at its option, may elect to purchase such [non-qualifying] Member[']s Company Interest at any time after the Member is no longer qualifie[d], and the non-qualifying Member shall sell his/her Company Interest at the Fair Market Value ***as defined herein*** paid in quarterly installments over a period of up to five years."[37] Section 10.10(c) unambiguously states

---

[36] R. Doc. 38-2 at 26.
[37] *Id.* at 22 (emphasis added).

that "*[f]or purposes of this Operating Agreement*, the term 'Fair Market Value' shall mean the Book Value of a Company Interest with no discount by reason of a minority Company Interest or lack of liquidity."[38]  Under the plain language of the operating agreement, then, FMV is defined as book value.  *See Mixon v. Iberia Surgical, L.L.C.*, 956 So. 2d 76, 82-83 (La. App. 2007) (holding that, according to the express provisions of an LLC's operating agreement, FMV was defined to mean book value for purposes of calculating the buyout of a terminated member's interest even though the two terms generally are not viewed as synonymous).  "Book Value" is defined in section 1.9 as "the accounting value of any asset, liability or Company Interest as determined from the accounting records of the Company as of a specific date … taking into account all transactions of the Company to such date and employing the method of accounting then in effect.  With respect to a Company Interest, Book Value means the particular Member's Capital Account balance."[39]

      But Little points to section 1.23 as providing the relevant definition of FMV and urges that any conflict between it and section 10.10(c) evinces ambiguity that should be construed against the operating agreement's drafters.  However, there is no conflict.  While section 1.23 "defines" FMV, that section offers no actual definition of FMV different than book value, but instead sets forth the method of determining the book value, including initially a valuation by the managing members and then hiring an appraiser in the event of the affected member's disagreement with the valuation of the managing members.[40]  The parties followed the process established by section

---

[38] *Id.* at 23 (emphasis added).
[39] *Id.* at 2-3.
[40] *Id.* at 4. Section 1.23 states that FMV means:

    … the valuation of any asset of the Company [*i.e.*, QTS], whether real or personal property, as determined by the Managing Member(s), and in the case of a Capital Contribution by the mutual agreement of the Managing Member(s) and the contributing member.  If the contributing Member does not agree with the valuation determined by the Managing Member(s), the value shall be determined upon an appraisal of the asset by a duly qualified appraiser for the type of assessment being appraised.  The appraiser shall be selected by the Managing Member(s) and any fees for the appraiser and all costs relating to the appraisal shall be borne and paid by the Company.

7

1.23 in hiring MacMorran to determine the book value of Little's membership interest in QTS after they could not agree on the value. And MacMorran determined the book value of Little's interest to be $19,485.[41] QTS has placed that amount, plus interest ($22,000 in total) into the registry of the court. Because this is all that QTS could conceivably owe to Little for his remaining claim against it, Little's breach-of-contract claim against QTS for failure to pay him the FMV of his membership interest as calculated by MacMorran (count 1) is dismissed with prejudice. *See Gonsoulin v. Shell Oil Co.*, 321 F. Supp. 900, 902 (W.D. La.) (finding that defendant was relieved of all liability as to the funds deposited into the court's registry under the authority of La. Code Civ. P. art. 4658), *aff'd*, 445 F.2d 861 (5th Cir. 1971).

IV. **CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that QTS's Rule 12(c) motion for judgment on the pleadings (R. Doc. 38) is GRANTED.

IT IS FURTHER ORDERED that Little's breach-of-contract claim against QTS for failure to pay him the FMV of his membership interest as calculated by MacMorran (count 1) is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 30th day of November, 2023.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[41] R. Doc. 38-3 at 3.

8