UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CARL LITTLE, *et al.* | CIVIL ACTION |
| VERSUS | NO. 23-5394 |
| QUALITY TITLE SERVICES, LLC, *et al.* | SECTION M (1) |

### ORDER & REASONS

Before the Court is a motion filed by plaintiffs Carl Little and Carl Little Law, LLC ("Little Law") (together, "Plaintiffs") seeking reconsideration of this Court's October 26, 2023 Order & Reasons dismissing the third, fourth, and fifth causes of action alleged in the complaint.[1] Defendants Sternberg, Nacarri & White, LLC ("SNW"); Scott Sternberg, Clayton White, Joseph Marriott, and Keith Nacarri (collectively, the "QTS member defendants"); and M. Suzanne Montero (together with SNW and the QTS member defendants, "Defendants") respond in opposition.[2] Also before the Court is Defendants' motion to strike exhibit A attached to Plaintiffs' motion for reconsideration.[3] Plaintiffs respond in opposition,[4] and Defendants reply in further support of their motion.[5] Having considered the parties' memoranda, the record, and the applicable law, the Court denies the motion for reconsideration and grants the motion to strike.

**I.   BACKGROUND**

This case concerns claims brought by a former member of a limited liability company ("LLC") against that company, other members of the LLC, and an associated law firm. SNW is a

---

[1] R. Doc. 40 (citing R. Doc. 36).
[2] R. Doc. 48.
[3] R. Doc. 49.
[4] R. Doc. 51.
[5] R. Doc. 55.

New Orleans-based law firm founded by Sternberg, Nacarri, and White in 2017.[6]  Defendant Quality Title Services, LLC ("QTS") is a title company affiliated with SNW that handles real estate closings and other title-related matters.[7]  In 2019, QTS's members entered into the relevant operating agreement for the LLC.[8]  At that time, QTS's members, and their corresponding ownership interests, were: Sternberg (15%), White (15%), Naccari (15%), Marriott (20%), C. Richard Gerage (20%), and Little (15%).[9]  Gerage, Marriott, and Naccari were QTS's managing members.[10]  QTS's operating agreement required its members to be continually associated with SNW, either as an employee or "of counsel" attorney.[11]  Thus, in 2019, Little began working for SNW as a contract lawyer.[12]

In July 2022, Little resigned from SNW.[13]  According to Little, his resignation from SNW made him a "non-qualifying member," but a member nonetheless, of QTS.[14]  The operating agreement states that if a member is no longer affiliated with SNW, as required by the operating agreement, QTS, "at its option, may elect to purchase such Member[']s Company Interest at any time after the Member is no longer qualifie[d], and the non-qualifying Member shall sell his/her Company Interest at the Fair Market Value ['FMV'] as defined herein paid in quarterly installments over a period of up to five years."[15]  On October 14, 2022, QTS sent Little a check

---

[6] R. Doc. 10-1 at 2.  Defendant Montero is also a member of SNW.  R. Doc. 2-1 at 2-3.
[7] R. Doc. 2-1 at 2.
[8] R. Doc. 10-2.
[9] *Id.* at 28-34.
[10] *Id.* at 36.
[11] *Id.* at 13.
[12] R. Doc. 2-1 at 2.
[13] *Id.* at 3.
[14] *Id.* at 3, 8.
[15] R. Doc. 10-2 at 22.  QTS's operating agreement establishes the method for fixing FMV as:
> … the valuation of any asset of the Company [*i.e.*, QTS], whether real or personal property, as determined by the Managing Member(s), and in the case of a Capital Contribution by the mutual agreement of the Managing Member(s) and the contributing member.  If the contributing Member does not agree with the valuation determined by the Managing Member(s), the value shall be determined upon an appraisal of the asset by a duly qualified appraiser for the type of assessment

for $5,000 as a "good faith payment until the purchase price is determined."[16] The parties agreed to engage a business valuator to determine QTS's FMV.[17] After considering three names suggested by Little, QTS chose Jason MacMorran of Postlewaite & Netterville, APAC.[18]

Plaintiffs allege that, from 2019 to July 2022, SNW improperly billed QTS $457,994.16 for "legal services" that could have been performed in-house at QTS, doing so to diminish the value of Little's QTS ownership shares and reduce his pro rata distributions.[19] Plaintiffs contend that MacMorran valued QTS at $903,277, meaning that Little's corresponding 15% membership interest is worth $135,000.[20] Plaintiffs claim that QTS refuses to pay Little the proper FMV for his membership interest as calculated by MacMorran.[21] They also claim that, because Little is still a member of QTS, he is entitled to a pro rata share of any distributions from the date of his resignation from SNW until the parties reach an agreement as to the value of his interest in the entity and a corresponding sales price.[22]

Plaintiffs also allege that Little discovered during the valuation process (when QTS produced documents to MacMorran) that the QTS member defendants applied for, and received, Paycheck Protection Program ("PPP") and EIDL Loans (together, the "government loans"), without his knowledge and consent.[23] Plaintiffs claim that this constitutes a breach of fiduciary duty and also that, if the funds were distributed among the members, Little is entitled to a share of

---

being appraised. The appraiser shall be selected by the Managing Member(s) and any fees for the appraiser and all costs relating to the appraisal shall be borne and paid by the Company.

*Id.* at 4.
  [16] R. Doc. 2-1 at 4.
  [17] *Id.*
  [18] *Id.*
  [19] *Id.* at 3, 4, 6-8.
  [20] *Id.* at 4.
  [21] *Id.* at 5.
  [22] *Id.* at 8.
  [23] *Id.* at 5. "EIDL" stands for the U.S. Small Business Administration's COVID-19-related Economic Injury Disaster Loan program.

those funds in proportion to his ownership interest in QTS.[24] Plaintiffs further allege that SNW failed to pay Little for legal services he performed while working for SNW as a contract lawyer.[25]

On June 29, 2023, Plaintiffs filed this action in the Civil District Court for the Parish of Orleans, State of Louisiana.[26] In the first cause of action ("count 1"), Little alleges a breach-of-contract claim against QTS for failure to pay him the FMV of his membership interest ($135,000) as calculated by MacMorran.[27] The second cause of action ("count 2") is a breach-of-fiduciary-duty claim by Little against the QTS member defendants for their alleged failure to pay him the FMV of his membership interest in QTS.[28] The third cause of action ("count 3") is another breach-of-fiduciary-duty claim, and also a breach-of-contract claim, by Little against the QTS member defendants, this time for their alleged failure to include Little in the application process for, and distribution of, the government loans.[29] In the fourth cause of action ("count 4"), Little brings conversion and theft claims against the QTS member defendants for receiving proceeds of the government loans without giving Little his pro rata share.[30] In the fifth cause of action ("count 5"), Little alleges that the QTS member defendants and Montero (a member of SNW, but not QTS) engaged in a conspiracy to fraudulently bill QTS for legal services performed by SNW in order to reduce the value of Little's ownership in QTS and the amount of his distributions from QTS.[31] Little also claims that these actions were a breach of fiduciary duty by the QTS member defendants.[32] The sixth cause of action ("count 6") is a breach-of-contract claim by Little and Little Law against SNW for its alleged failure to pay for legal work Little performed while

---

[24] *Id.* at 5-6.
[25] *Id.* at 8.
[26] *Id*. at 1.
[27] *Id.* at 9.
[28] *Id.* at 9-10.
[29] *Id.* at 10-11.
[30] *Id.* at 11.
[31] *Id.* at 11-12.
[32] *Id.*

4

associated with SNW as a contract lawyer.[33] In the seventh cause of action ("count 7"), Little brings a breach-of-contract claim against QTS and the QTS member defendants for their failure to continue to pay him pro rata distributions from the date of his resignation from SNW until the completion of the sale of his membership interest in QTS as a "non-qualifying member."[34] The eighth cause of action ("count 8") is an unjust enrichment claim by Little and Little Law against SNW and the QTS member defendants for SNW's billing QTS for legal services and for failing to include Little in any distributions of the government loans.[35] The ninth cause of action ("count 9") is another unjust enrichment claim by Little and Little Law against the QTS member defendants and Montero for their failure to pay for legal services performed by Little while he was a contract lawyer at SNW.[36] In the tenth cause of action ("count 10") (mislabeled, ninth cause of action), Little seeks an accounting from QTS.[37]

In state court, QTS reconvened for a concursus proceeding, placing into that court's registry the sum of $19,485, which QTS claims is the amount Little is due for the FMV of his ownership interest in the LLC.[38] Thereafter, the United States of America removed the case to this Court because it is a judgment creditor of Little, with a right to enforce its money judgment against Little's interest in QTS and in any intangible property, including his claims against the defendants.[39]

Defendants and QTS moved to dismiss some of Plaintiffs' causes of action.[40] On October 26, 2023, this Court granted the motions, dismissing: any claims purportedly asserted by Little

---

[33] *Id.* at 12-13.
[34] *Id.* at 13-14.
[35] *Id.* at 14-15.
[36] *Id.* at 15-16.
[37] *Id.* at 16.
[38] R. Doc. 2-2 at 1-5.
[39] R. Doc. 2 at 1-5.
[40] R. Docs. 10; 12.

Law in counts 2, 3, 4, 5, 7, and 8 against SNW, the QTS member defendants, and Montero, and any claims asserted by Little Law against QTS; Little's breach-of-fiduciary-duty claim against the QTS member defendants for failure to pay the FMV for Little's membership interest in QTS (count 2); Little's breach-of-fiduciary-duty and conversion claims against the QTS member defendants for failing to notify him of the application for, and receipt and distribution of, the government loans (counts 3 and 4); Little's claim against the QTS member defendants and Montero for conspiracy to fraudulently bill QTS for legal services (count 5); Little's breach-of-contract claim against the QTS member defendants and QTS for failing to continue to pay distributions to him from QTS after his resignation from SNW (count 7); Little's unjust enrichment claims against SNW, the QTS member defendants, and Montero (counts 8 and 9); and Little's claim for an accounting (count 10).[41] Plaintiffs seek reconsideration of the October 26 Order & Reasons as to the dismissal of counts 3, 4, and 5.

## II.    LAW & ANALYSIS

### A. Legal Standard

Plaintiffs seek reconsideration of an interlocutory order. Motions for reconsideration of interlocutory orders are governed by Rule 54(b) of the Federal Rules of Civil Procedure. Under that rule, a "court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quotation omitted). Rule 54(b) "'reflect[s] the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'" *Id.* at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015)) (internal quotation marks omitted). However, the district court must exercise

---

[41] R. Doc. 36.

this broad discretion sparingly to forestall the perpetual reexamination of orders and the resulting burdens and delays. *See Calpecto 1981 v. Marshall Expl., Inc.*, 989 F.2d 1408, 1415 (5th Cir. 1993) (observing that if "the district court was required to reconsider [an interlocutory order] simply because [the losing party] belatedly came forward with evidence not submitted prior to the ruling[,] ... the cycle of reconsideration would be never-ending"); *Domain Protection, LLC v. Sea Wasp, LLC*, 2019 WL 3933614, at *5 (E.D. Tex. Aug. 20, 2019) ("although a district court may revisit an interlocutory order on any ground it sees fit, it may also use its discretion to prevent parties from, without justification, raising new arguments for the first time") (emphasis, alterations, and quotation omitted); 18B CHARLES A. WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4478.1 (3d ed. 2019) ("A trial court could not operate if it were to yield to every request to reconsider each of the multitude of rulings that may be made between filing and final judgment.").

### B. Plaintiffs' Motion for Reconsideration

#### 1. Counts 3 and 4

As to counts 3 and 4, this Court held that Little did not state breach-of-fiduciary-duty and conversion claims against the QTS member defendants for failing to notify him of the application for, and receipt and distribution of, the government loans because he did not (1) allege any facts beyond mere speculation that the QTS member defendants took distributions of the government loans; (2) show that he had an ownership interest in the proceeds from the government loans, which belonged to QTS; or (3) identify a provision of the operating agreement that created a fiduciary duty concerning the distribution of loan proceeds.[42] In the motion for reconsideration, Little argues that the Court overlooked section 5.1 of the QTS operating agreement which requires that net cash

---

[42] R. Doc. 36 at 9-12.

7

from operations be distributed among the members according to their pro rata shares, and, says Little, the loan proceeds qualified as "proceeds of the business" that needed to be so distributed.[43] Alternatively, Little argues that the Court should permit him to conduct discovery into this issue.[44] In opposition, the QTS member defendants argue that the Court correctly dismissed counts 3 and 4 because the government loan proceeds could only be used for specific, earmarked purposes, and did not constitute net proceeds from QTS's operations.[45] They also point out that Little quarrels only with the Court's conclusion concerning the operating agreement, not the other reasons for dismissal, especially that the loan proceeds were QTS's property and any claim for their alleged theft would belong to the entity, not Little.[46]

As explained more fully in this Court's October 26 Order & Reasons, Little failed to state breach-of-fiduciary-duty and conversion claims against the QTS member defendants concerning the distribution of the government loans for multiple reasons.[47] Citing no authority, Little proclaims in conclusory fashion that "PPP loan proceeds are proceeds of the business," making no other effort to fit the loan proceeds within the language of section 5.1, which deals with the distribution of "net cash from operations."[48] "Net cash from operations" is defined in the operating agreement as cash receipts from "gross revenues" after certain deductions, and the term "gross revenues," in turn, is defined to include cash receipts from operations but not "cash funds obtained from loans."[49] Thus, the plain language of the operating agreement excludes loan proceeds from the funds to be distributed and thereby reveals the fallacy of Little's conclusory argument for reconsideration. Regardless, setting the operating agreement to one side, Little did not allege any

---

[43] R. Doc. 40-1 at 4-5.
[44] *Id.* at 5.
[45] R. Doc. 48 at 4-5.
[46] *Id.* at 5-6.
[47] R. Doc. 36 at 9-12.
[48] R. Doc. 10-2 at 12-13.
[49] *Id.* at 5.

facts supporting a plausible claim that the QTS member defendants took distributions of the government loans, and more importantly, he did not show that he had an ownership interest in the proceeds from the government loans, which belonged to QTS, not Little. The motion for reconsideration does not change this analysis either. Therefore, the motion is DENIED as to counts 3 and 4.

### 2. Count 5

In dismissing count 5, this Court held that Little did not state a claim against the QTS member defendants and Montero for conspiracy to fraudulently bill QTS for legal services because he did not plead fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.[50] Instead, Little generally alleged that the QTS member defendants and Montero "conspired to suppress the value of [his] interest in QTS and inflate revenues to SNW by satisfying SNW invoices charging for title services that should have been performed by QTS," but he offered no concrete examples elucidating the who, what, when, where, and how of the alleged fraud or details of any misrepresentations.[51] Further, there was no information alleged demonstrating why QTS, and not SNW, should have performed specific legal services, when these services were performed, who performed them, what they related to, or why the billing that occurred was in contravention of the affiliation and course of conduct between the two entities.[52] And, Little did not explain why only he – and not the two other members of QTS, including Marriott, who were not also members of SNW – was harmed by the alleged fraud.[53]

In his motion for reconsideration, Little argues that, although the Court recognized that fraud may arise from silence or an omission, it ignored that such instances of fraud do not need to

---

[50] R. Doc. 36 at 12-14.
[51] *Id.* at 13-14 (citing R. Doc. 2-1 at 11-12).
[52] *Id.* at 14 (citing R. Doc. 2-1 at 11-12).
[53] *Id.* (citing R. Doc. 2-1 at 11-12).

9

be pleaded with particularity when there is a relationship of trust and a suppression of the truth.[54] Little contends that he was an employee of SNW, and the QTS member defendants and Montero conspired to defraud him by suppressing the truth in their dealings with him.[55] Little attaches exhibit A to his motion which purports to show examples of SNW's improperly billing QTS for legal services.[56] Finally, Little argues that he should be granted leave to amend his pleadings to allege specific instances of improper billing.[57]

In opposition, Defendants argue that, whether fraud is based on misrepresentation or silence, it must be pleaded with specificity, identifying what was omitted from disclosure, where the omissions should have appeared, and how the omitted facts made the misrepresentation misleading.[58] They argue that the Court correctly found that Little failed to allege such facts.[59] Further, Defendants argue that Little overlooks that any claim for damages to QTS's bottom line belongs to the LLC, not Little.[60] Finally, Defendants argue that Little should have requested leave to amend before his claim was dismissed and that any amendment would be futile because the damage alleged was sustained by QTS, not Little.[61]

As explained more fully in this Court's October 26 Order & Reasons, Little failed to state a claim against the QTS member defendants and Montero for conspiracy to fraudulently bill QTS

---

[54] R. Doc. 40-1 at 5-6.
[55] *Id.*
[56] R. Doc. 40-3. The Court will not consider exhibit A. A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). Because Plaintiffs seek reconsideration of the Court's ruling on a motion to dismiss and exhibit A fits none of the listed categories, nor was it part of the record before the Court on the motion asked to be reconsidered, the Court cannot consider this extrinsic evidence now. Accordingly, Defendants' motion to strike exhibit A (R. Doc. 49) is GRANTED.
[57] R. Doc. 40-1 at 7.
[58] R. Doc. 46 at 6.
[59] *Id.* at 6-7.
[60] *Id.* at 7-8.
[61] *Id.* at 9-10.

for legal services because he offered no specific facts indicating the who, what, when, where, and how of the alleged fraud.[62] Under Louisiana law, "fraud" is defined as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other" and can also result from silence or inaction. La. Civ. Code art. 1953. The elements of a fraud cause of action are: (1) "a misrepresentation of material fact"; (2) "made with the intent to deceive"; (3) "where there was a reasonable and justifiable reliance by the plaintiff and resulting injury." *Riedel v. Fenasci*, 270 So. 3d 795, 801 (La. App. 2018). "'[A] plaintiff alleging fraud by silence should be able to allege the following with reasonable particularity: (1) the information that was withheld, (2) the general time period during which the fraudulent conduct occurred, (3) the relationship giving rise to the duty to speak, and (4) what the person or entity engaged in the fraudulent conduct gained by withholding the information.'" *Goux Enters. v. Indian Harbor Ins. Co.*, 2023 WL 2955305, at *5 (E.D. La. Apr. 14, 2023) (quoting *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F. Supp. 587, 598 (E.D. La. 1993)). Here, Little says in his motion to reconsider that he trusted his fellow QTS members and Montero to deal fairly with him and they did not.[63] But Little still has not explained why they had any duty to speak concerning the billing practices, what information was allegedly withheld in terms of the billing and whether it was deliberately withheld, or how he alone was harmed by the alleged fraud. This is especially curious since the operating agreement provides that certain legal services for QTS would be performed by SNW.[64] It is simply not enough to claim fraud by silence

---

[62] R. Doc. 36 at 12-14.
[63] R. Doc. 40-1 at 5-6.
[64] R. Doc. 10-2 at 17.

and then to be silent about the why, what, when, and how of the fraud supposedly perpetrated.[65]

The motion to reconsider is denied as to count 5.

### III.     CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiffs' motion to reconsider (R. Doc. 40) is DENIED.

IT IS FURTHER ORDERED that the Defendants' motion to strike exhibit A (R. Doc. 49) is GRANTED.

New Orleans, Louisiana, this 30th day of November, 2023.

 

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[65] *See* R. Doc. 48 at 7 (as Defendants argue, "[Little] did not explain what facts the defendants allegedly omitted, when the defendants should have disclosed those facts, how he was misled in relation to the alleged fraudulent 'billing practices,' or how he acted differently in reliance on any of the alleged conduct to his detriment.").